1  
Lawrence Munar Asuncion  
Maria Estrella C. Asuncion  
2  
1156 Barcelona Drive  
Pacifica, California 94044  
3  
415-215-2218  

4  

<u>IN THE DISTRICT COURT OF THE UNITED STATES</u>  
<u>FOR THE NORTHERN DISTRICT OF CALIFORNIA</u>  

5  

CV 10            4357

6  
Lawrence Munar Asuncion, and  ) No._____  
Maria Estrella C. Asuncion,      )  
7              Plaintiffs,       ) VERIFIED COMPLAINT for money damages,  
                                 ) declaratory relief, injunctive relief, quiet title,  
8        vs.                     ) other.  
                                 )
9                                )      TRIAL BY JURY  
                                 )      DEMANDED  
10 JP MORGAN CHASE BANK, NA,     )  
UNITED STATES OF AMERICA,        )  
11 CHASE HOME FINANCE, LLC       )  
SAN MATEO COUNTY RECORDER,       ) HEARING IN CHAMBERS REQUESTED.  
12 and JOHN DOES 1 through 10,   )        PRIVATE MATTER.  
              Defendants.        )  

13  

14                    I. <u>Introduction, Jurisdiction and Venue.</u>  

15      1.1 COMES NOW, above named Plaintiffs (hereinafter "Plaintiff") seeking relief mostly  

16 in the nature of quiet title and nullification of contract for breach, violations of federal law,  

17 violations of Cal. state law, and injunctive relief against foreclosure upon real estate now  

18 occupied by the Plaintiffs.  

19      1.2 Federal courts have jurisdiction over cases arising where there is a controversy arising  

20 under the Constitution, laws and treaties of the United States. The UNITED STATES OF  

21 AMERICA acting as principal for HUD, The Department of Housing and Urban Development,  

22 who has insured the bank loan from the original lender in this matter.  

23      1.3 This case involves the Constitution and laws of the United States, since there are  

24 multiple violations of federal law involved in this case and multiple violations of The US  

25 Constitution, particularly the Due Process clause of the Fifth Amendment.

Please also see *Mookini v. U.S.*, 303 U.S. 201; *Old Colony Trust Co. v. C.I.R.*, 279 U.S. 716, 724; and *O'Donoghue v. U.S.*, 289 U.S. 516 for validation that only District Courts of the United States are Article Three Courts. **Exhibit**s to this complaint are as follows:

**Exhibit A**: Deed to the subject property.

**Exhibit B**: Copies of notices from Defendants to Plaintiffs (Notice of Default & Election to Sell Under Deed of Trust; Notice of Trustee's Sale)

**Exhibit C**: Certified copy of "Money Facts" 1964 (Published by The Committee on Banking and Currency, House of Representative – selected pages 8, 9, 10, 11, 22, 23, 24 & 25).

**Exhibit D**: Copy of a Note endorsed by Country Wide.

**Exhibit E**: Certified copy of "Modern Money Mechanics" (selected pages 2 to 7 only) and last page "Published by the Federal Reserve Bank of Chicago").

**Exhibit F**: Copy of a Promissory Note (Richard Webster to World Savings Bank) with endorsement stamp (last page)

**Exhibit G**: Request for debt validation (Qualified Written Request & Debt Validation/Offer of Performance)

**Exhibit H**: Common law liens.

1.4 The District Court of the United States for the District of California has jurisdiction over this action pursuant to, and jurisdiction is hereby invoked under, The Constitution For The United States of America, Article III, which provides for common law jurisdiction and venue and makes said jurisdiction and venue mandatory, see *Callan v. Wilson*, 127 US 540 (1888), which states that Article Three of the Constitution mandates common law jurisdiction.

1.5 Additionally, under a ruling by the US Supreme Court in *443 Cans of Frozen Egg Product v. United States of America*, 226 US 172, (1912) common law is mandatory. See also Commentaries on the Constitution, by Joseph Story (1833) Volume III, at pages 506-507, which states that Article III, § 2, requires that the jurisdiction in courts in the United States must be common law. We are reminded that the Seventh Amendment to the US Constitution mandates common law jurisdiction and venue whenever there is a controversy over twenty dollars.

1.6 The Plaintiff cannot be left without a remedy under common law, as guaranteed under Article III of the Constitution for the United States of America. Jurisdiction of this Court is

invoked pursuant to 12 USC § 2608 (RESPA), 15 USC § 1640 (Truth in Lending Act), 28 USC §§ 1331, 1337, 2201, and 2202, and U.S. Constitution Amdt. V. Acts complained of occurred or are occurring in San Mateo County, California. This Court has jurisdiction and Venue is proper. This court also has jurisdiction because of diversity of citizenship of the parties and multiple violations of federal law, such as Title 15 USC § 1692e(2) misrepresentation of the character, amount or legal status of a debt and § 1692(5) threatening to take actions that cannot be lawfully taken.

1.7 This is an action for quiet title and an order to cease and desist to redress the past deprivations and to prevent the further deprivation by Defendants and their agents, acting under the color (pretense) of state law, of Plaintiffs private property rights, privileges, and immunities secured by the Constitution of the United States, specifically by the due process clause of the Fifth Amendment thereto, which invokes the due process clauses of the Seventh and Fifth Amendments to said constitution upon the States and guarantees to all private citizens the freedom of private property and the separate and, distinct common law jurisdiction of this Court in accord with the rules of common law related to fiduciary duties.

## II. Parties.

2.1 We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, are the Plaintiffs, private citizens living in California. For the purposes of this action Plaintiff's address is 1156 Barcelona Drive, Pacifica, CA 94404.

2.2 Defendant's JP MORGAN CHASE BANK, NA, CHASE HOME FINANCE, LLC, and SAN MATEO COUNTY RECORDER are named as Defendants because they exercised powers that they do not have and have taken actions in conjunction with local attorneys to deprive me of my private property without due process of law. Due process of law deprivations occurred, in this context, when DEFENDANTS, acted in league with DOE DEFENDANTS to foreclose on my property, even though they had no standing to do so, since the notes were sold to the Mortgage Backed Security, and probably sold later to an undisclosed Third Party Note Buyer, and under the subrogation doctrine established by the US Supreme Court, neither the Mortgage Backed Security nor an Undisclosed Third Party Note Buyer can foreclose.

1    Correct address for Defendant's are believed to be as follows: JP MORGAN CHASE BANK,

2    NA, 270 Park Avenue, New York, NY 10017; CHASE HOME FINANCIAL, LLC, 9200

3    Oakdale Avenue, 9th Floor Chatsworth, CA 91311; SAN MATEO COUNTY RECORDER 555

4    County Center, 1st Floor, San Mateo, CA 94063. A courtesy copy of this complaint is also being

5    sent to CALIFORNIA RECONVEYANCE COMPANY, 9200 Oakdale Avenue, Mail Stop

     N110612, Chatsworth, CA 91311.

6        2.3 It appears that the notes are alleged to be held by JP MORGAN CHASE BANK,

7    NA's or CHASE HOME FINANCE, LLC's Mortgage Backed Security or some other financial

8    institution, although it is impossible to determine who is the actual holder of the note. Please

9    review the following for affirmation that the right of subrogation does not exist for the

10   Defendants; *Henningsen v. United States Fidelity & G. Co.*, 208 US 404; 52 L.Ed 547, 28 S.Ct.

     389; *Prairie State National Bank v. United States*, 164 US 227; 41 L.Ed. 412; 17 S.Ct. 142;

11   *Aetna L. Ins. Co. v. Middleport*, 124 US 534; 31 L.Ed. 537, 8 S.Ct. 625; *McBride v. McBride*,

12   148 Or 478, 36 P2d 175.

13       2.4 AS A RESULT, THE DEFENDANT, JP MORGAN CHASE BANK, NA, OR

14   CHASE HOME FINANCE, LLC HAS NO RIGHT, TITLE OR INTEREST IN THE LAND

15   AND HOME, WHICH IS THE SUBJECT OF THIS CIVIL ACTION, SINCE THE NOTES

16   HAVE BEEN SOLD, AND THE UNDISCLOSED THIRD PARTY NOTE BUYER DOES

17   NOT HAVE THE RIGHT OF SUBROGATION TO THE ORIGINAL NOTES THAT THEY

     ALLEGEDLY PURCHASED AND THAT WAS ALLEGEDLY ASSIGNED TO THEM.

18   THEY HAVE NO STANDING TO FORECLOSE ON MY PROPERTY. See also 73 AmJur2d §

19   90 which states that a right of subrogation does not exist for a mere volunteer, or someone who

20   has not paid the entire mortgage debt in full.

21       2.5 The SAN MATEO COUNTY RECORDER (hereinafter "RECORDER") has

22   permitted JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC to record

23   documents that are unlawful for them to record, such as the notice of Default, which is unlawful,

24   because neither JP MORGAN CHASE BANK, NA, or CHASE HOME FINANCE, LLC has

25   possession of the note, see *Matter of Staff Mortg. & Inv. Co.*, 550 F2d 1228, (1977), affirmed

three times by the Ninth Circuit. The Defendants used the San Mateo County Recorder, a government agency as their means of violating my right to due process of law under the Fifth Amendment to the US Constitution. The SAN MATEO COUNTY RECORDER also allowed the Defendant JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC to file fraudulent documents. Correct address for Defendant RECORDER is believed to be 555 County Center, 1st Floor, San Mateo, CA 94063.

2.6 The fact that The Mortgage Backed Security did not pay the entire mortgage debt in full and is not secondarily liable is unrebutted and is therefore a fact undisputed and agreed to by the Defendants. These Defendants are attempting to deprive Plaintiff's of their rights to use and ownership of my land and home, without due process of law.

### III. Opening Statement.

3.1 This is an action to quiet title to land and buildings situated at, 1156 Barcelona Drive, Pacifica, in San Mateo County, California. This action is brought by the Plaintiffs, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, acting in our private capacity in this matter, as property owners in California, and we have allodial title, see **Exhibit** A.

3.2 WE ARE NOT ASKING FOR MONETARY DAMAGES if this complaint is uncontested. Uncontested means that no answer and no motions or other pleadings are filed by the Defendants. On or about July 17, 2006, we entered into an agreement with WASHINGTON MUTUAL BANK, a Washington based Banking Corporation, who arranged a loan of $900,000.00 US Dollars for a first note and second note for $ 174,000.00, which on property located at 1156 Barcelona Drive, Pacifica, in San Mateo County, California.

3.3 The original lender, WASHINGTON MUTUAL BANK advertised and represented that they had lawful money of the United States of America to lend when they negotiated and contracted with me. I signed two promissory notes for this property, a first note and deed of trust and a second note and deed of trust. I have received a series of notices and documents in the mail regarding the planned foreclosure on the loan for my house. I also received a Notice of Default.

3.4 The default notice stated that my only option was to pay the unpaid payments to reinstate my loan, and that it may be sold without court action, which is untrue. According to

CIVIL COMPLAINT for money damages
and rescission of mortgage contract          5

California Civil Code 2924, it is mandatory for the lender to obtain a court order from a court of record, a procedure that they chose to ignore most of the time, as is the case here. The two notes may have been sold to a series of other banks but were apparently sold to a mortgage backed security and may be held currently by an undisclosed third party note buyer.

3.5 It appears that the sale of the notes occurred soon after the signed notes and deeds of trust were received by the original lender. It appears that JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC claims to be the current holder-in-due-course of the note, even though there is good direct evidence that they have assigned the note to another financial institution, the Mortgage backed Security mentioned above.

3.6 It is also possible that the note was sold to another bank like The BANK OF NEW YORK. The bank involved, JP MORGAN CHASE BANK, NA and others named in this complaint, and others not named in this complaint, have exceeded their authority, or soon will be asked to exceed their authority, have acted outside the scope of their authority, violated my rights and violated the law, by claiming to have standing to foreclose on the notes and deeds of trust, which were probably sold to a mortgage backed security who purchased by them from a previous alleged creditor, WASHINGTON MUTUAL BANK, NA, with whom I signed the promissory note and deed of trust.

3.7 WASHINGTON MUTUAL BANK apparently sold the notes and the servicing rights to this loan to a Mortgage backed security. By this act of selling the note and deed of trust, the original lender is no longer the holder-in-due course of the note. It is also uncertain, at this time, who is the current holder-in-due-course of the original note.

IV. Short Plain Statement of the Claims Against the Defendants.

4.1 Neither JP MORGAN CHASE BANK, NA, nor anyone else have supplied any material evidence that they are the holder in due course of the note and deed of trust. If they do not bring forward the original note in court then they do not have possession of the note, and this proves that the note is lost, stolen or destroyed, and thus California Commercial Code § 3309 must be invoked and applied, compelling the Defendants to adhere to and comply with that

Section of California Commercial Code or else disclaim any right, title or interest in the subject property.

4.2 This is an established requirement and has been a factor in determining whether or not a particular creditor has standing to sue for recovery of damages in a foreclosure. To recover on a promissory note, the Defendant must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the Defendant is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. See *In Re: SMS Financial LLC. v. Abco Homes, Inc.*, No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.) In *Carnegie Bank v Shalleck*, 256 N.J. Super 23 (App. Div 1992), the Appellate Division held, "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302.

4.3 Since no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security." See also *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 (9th Cir 1977), "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. *In Re Investors & Lenders, Ltd.*, 165 B.R. 389.

4.4 The failure to bring forward the note is a fact that has not been rebutted, refuted, challenged or denied. California Commercial Code §§ 3301, 1201(b)(21)(A), and 3501 all state that the owner of the note is the holder of the note. As a result, only the owner of the note can enforce the instrument. As a result, the Defendants cannot foreclose and have no right, title and interest in the subject property, and have violated my rights by foreclosing. As a result the Defendants did not have standing to foreclose, and have violated the Plaintiff's rights to due process of law by taking these actions in conjunction with the County Recorder, when they did not have standing to foreclose against me.

1   The Defendants have a duty to comply with the above provisions of law and did not do so.

2       4.5 Additionally, a more important issue is the question of whether or not the Defendants

3  or any one else who may have acquired the notes recently has the right of subrogation as a

4  stranger to the transaction, and as someone who has not paid the entire mortgage debt in full, see

5  73 AmJur2d § 90.

6       4.6 Defendants are a bank and claims to have received the note or claimed to have

7  foreclosure powers, whereby that company claims to have the powers of a party who owns the

8  Note and Deed of Trust associated with the bank loan for the Plaintiff's property. Neither JP

   MORGAN CHASE BANK, NA nor anyone else such as their principals or agents have the right

9  of subrogation as a stranger to the transaction.

10

11      4.7 Defendant's have never produced the note when asked nor have they identified the

   actual note holder, proving that they are not the holder of the note Plaintiff's signed with

12  WASHINGTON MUTUAL BANK. DEFENDANTS are, therefore, a stranger to the transaction

13  and has not produced any evidence whatsoever that they are a party to this loan.

14      4.8 Furthermore, when JP MORGAN CHASE BANK, NA acquired WASHINGTON

15  MUTUAL BANK they acquired selected assets of WASHINGTON MUTUAL BANK,

16  according to FDIC records of the acquisition. As a result, the Defendants cannot foreclose and

17  has no right, title and interest in the subject property, and have violated the Plaintiff's rights by

18  foreclosing.

19      4.9 This question was explored in great depth in *Aetna L. Ins. Co. v. Middleport*, 124 U.S.

20  534, which stated that only a cosigner, or someone who is acting to protect their own junior lien

21  or an insurance company has the right of subrogation. "Subrogation in equity is confined to the

   relation of principal and surety and guarantors, to cases where a person to protect his own junior

22  lien is compelled to remove one which is superior, and to cases of insurance....Anyone who is

23  under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere

24  volunteer.". (emphasis mine) *Aetna Life v. Middleport*, 124 US 534, quoting *Suppiger v. Garrels*,

25  20 Bradwell App Ill. 625.

CIVIL COMPLAINT for money damages
and rescission of mortgage contract     8

4.10 As a result the Defendants did not have standing to foreclose, and have violated my rights to due process of law by taking these actions in conjunction with the County Recorder when the Defendants did not have standing to foreclose or to file a Notice of default against the Plaintiffs. The Defendants have a duty to comply with the above provisions of law and failed to do so.

4.11 In this matter the Note cannot be transferred or sold when the note is a non-negotiable instrument. The adjustable rate rider, makes the notes a conditional promise to pay, rather than an unconditional promise to pay pursuant to Uniform Commercial Code 3-106 and the equivalent under California law, California Commercial Code § 3106, making it a non-negotiable instrument.

4.12 The notes were transferred in violation of California Commercial Code § 3106, the California version of the UCC section cited above, and in violation of the subrogation doctrine, see *Aetna L. Ins. Co. v. Middleport*, 124 US 534 (1888). As a result of the foregoing, the note was transferred in violation of California law, and said transfer is null and void.

4.13 Because the Defendant, JP MORGAN CHASE BANK, NA, steadfastly refused to produce the original note, and WASHINGTON MUTUAL BANK and the bank that acquired them JP MORGAN CHASE, NA is clearly no longer involved in this transaction, therefore we know that the notes were sold to someone, in violation of the above-cite law. The adjustable rate rider attached to my note states as follows:

"THIS ADJUSTABLE RATE RIDER is made this 17TH day of JULY, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to WASHINGTON MUTUAL BANK, FA ("Lender") of the same date and covering the property described in the Security Instrument and located at: 1156 Barcelona Drive, Pacifica, CA (PROPERTY ADDRESS)".

4.14 As a result the Defendants did not have standing to foreclose against the Plaintiffs, and have violated my rights to due process of law by taking these actions in conjunction with the County Recorder when they did not have standing to foreclose. The Defendants have a duty to

comply with the above provisions of law and failed to do so.

4.15 The Defendants including JP MORGAN CHASE BANK, NA, and all of them, were clearly never a cosigner or a surety to the original Promissory note, and they are not currently the note holder because they have steadfastly refused to bring forward the original promissory note. JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC acts as though they bought the note and deed of trust from the original lender WASHINGTON MUTUAL BANK, but the evidence is that they have only purchased selected assets of WASHINGTON MUTUAL BANK.

4.16 Defendant JP MORGAN CHASE BANK, NA and CHASE HOME FINANCE, LLC have failed and refused to produce the note or demonstrate that they are a party to the loan. There is no recorded document transferring the note and deed of trust to JP MORGAN CHASE BANK, NA, or their principal a third party note buyer, therefore they have failed to meet the requirements under California law under Civil Code §§ 2924 and 2932.5, demonstrating that actually owned or held the note when they elected to foreclose under California Civil Code § 2924 and California Code of Civil Procedure § 1161a that they conducted the sale in accordance with Civil Code 2924 and that they ever had standing to foreclose.

4.17 There is no admissible evidence that the Defendant JP MORGAN CHASE BANK, NA or their agents owned or held the note and deed of trust or had authority to foreclose under the above-cited provisions of law and that they complied with California Civil Code § 2932.5, making it mandatory to record the assignment of the deed of trust and note prior to transfer or sale of the property in foreclosure.

4.18 This was never done. Thus the notice of default in foreclosure was void and invalid and must be set aside. Attorneys, have an auxiliary role to play in this matter, assisting JP MORGAN CHASE BANK, NA in their unlawful activities, by aggressively pursuing a foreclosure of the subject property, even though their clients do not have the right of subrogation as a stranger to the transaction.

4.19 The Defendants, including JP MORGAN CHASE BANK, NA, clearly never had the power to foreclose on the note and deed of trust, as a stranger to the transaction. As a result of

the foregoing, the Defendants, including JP MORGAN CHASE BANK, NA, and all of them, never had the power or standing to foreclose on the Plaintiff's home and have exercised this power under color of authority by using the California government, including the SAN MATEO COUNTY RECORDERS office, to attempt to take our private property without due process of law and without standing.

4.20 As a result the Defendants did not have standing to foreclose or file a Notice of Default, see **Exhibit** B, and have violated my rights to due process of law by taking these actions in conjunction with the County Recorder when they did not have standing to foreclose. The Defendants have a duty to comply with the above provisions of law and failed to do so.

4.21 Due process of law violations occurred when those without standing to sue are allowed to pursue a foreclosure or other type of legal action. Courts and court clerks have a gate-keeper role to play in this matter, designed to prevent a Plaintiff without standing from filing a civil action to enforce a foreclosure that they cannot lawfully enforce.

4.22 The Superior Court and their Court Clerk will be asked to set aside the law, and set aside their responsibilities to enforce and uphold the provisions of law, including Uniform Commercial Code that have been violated in this matter, and described above, thereby violating my rights to due process of law.

4.23 All Defendants, acting together have engaged in theft of the subject property. The term subrogation has a well-established meaning in the law, and the above US Supreme Court ruling has clear and unmistakable language, which does not lend itself to ambiguity or a multiplicity of interpretations.

### V. Statement Of The Facts Of The Case.

5.1 The Defendants and their agents have acted with gross negligence in their duty to Plaintiffs and all involved have failed to act to ensure that the Defendants adhere to the law in California providing for the recovery of real property in a foreclosure. The Seventh Amendment requires the mortgage lender to file a civil action against me for recovery of the subject property, when they have standing to sue for such recovery and obtain a court order prior to holding a sale of the subject property on the court house steps in a public auction.

5.2 Any sale of the property on the courthouse steps has to occur after a final court order flowing from a civil case for recovery of real property, because, that is the only proper event by which the mortgage lender takes ownership and control of the subject property, under which they claim to own the property. The very clear and unambiguous language of the Seventh Amendment mandates that a trial by jury must occur, where the matter in controversy exceeds twenty dollars. California Civil Code § 2924 implements the due process clause found in the Fifth Amendment of the US Constitution and makes it mandatory that a lender must first obtain a court order prior to holding a public auction for the foreclosed property on the courthouse steps.

5.3 There is no latitude for interpretation or debate in this regard. The plain language of California Civil Code § 2924 makes it mandatory to obtain a court order as a prerequisite to holding a foreclosure sale. Any other methods amount to theft of private property.

5.4 **First**; as a property owner in San Mateo County, I, Lawrence Munar Asuncion,and Maria Estrella C. Asuncion Plaintiff's, purchased the subject property in San Mateo County, California. This land is now Plaintiff's private property to which Plaintiff has allodial title, which means absolute ownership. Plaintiff owns the property in allodium and in "Dominium Directum Et Utile", please see Fairfax v. Hunter; 7 Cranch 603, 3 L.Ed. 453.

5.5 Plaintiff's have complete and absolute dominion in Plaintiff's property; which is the union of the title and the exclusive use of it. Plaintiff became aware after careful study and analysis that the original deed of trust claims a security interest in the subject property based upon the transfer of Federal Reserve notes, which is commercial paper, as described in *Clearfield Trust Company v. US*, 318 US 363; which states; "the United States as a drawee of commercial paper [federal reserve notes] stands in no different light than any other drawee" (bracketed portion added).

5.6 We realized that the Federal Reserve System never provides anything of substance or intrinsic value when they create the credit, which is only a bookkeeping entry for the loan, which is created by completing a ledger entry in the records of the bankers who wrote the original note and deed of trust, Please See **Exhibit** C and **Exhibit** E.

5.7 It is, furthermore, interesting that **Exhibit** E, a pamphlet published by the Federal Reserve Bank of Chicago, which states on page 3, and page 6, right column, second paragraph, that when a bank loan transaction is entered into, the bank deposits the promissory note, which is placed in a transaction account in the name of the borrower in exchange for the promissory note, proving that the loan is a mutual loan between the lender and the borrower and that the borrower funds his own loan with the promissory note. **Exhibit** F, at the last page, the moving papers and copy of a note filed by a bank in a civil case in California proves that the statements in **Exhibit** E, above are true.

5.8 The lender in **Exhibit** F endorsed the note with an endorsement stamp, stating "pay to the order of", that proves that they converted the note into a bank deposit as a source of funding for the loan, making the entire transaction a mutual loan between the lender and the borrower.

SEE ALSO **Exhibit** D, for a copy of a Note endorsed by COUNTRYWIDE, FSB, demonstrating conclusively that banks use endorsement stamps routinely or an allonge to deposit the note in a transaction account to create a mutual loan between the lender and the borrower and to fund the loan, as described in the report by the FEDERAL RESERVE BANK OF CHICAGO, see **Exhibit** E.

5.9 The Defendants, in this matter have not incurred a financial cost or damages by our failure to pay the alleged balance due on the note in this matter. When the Defendant JP MORGAN CHASE BANK, NA creates money it does not cost them anything to create said money.

5.10 Plaintiff bases his statement of fact upon pages 9,10,11, 22, 23, and 24 of the House Banking and Currency Committee Report called "Money Facts" published in 1964, see **Exhibit** C, which states on page 23 the following; "The business of banks is to lend money. The profit comes from the difference between the cost of creating money and the price they charge borrowers for that money. Now the cost of creating money is negligible. Congress has delegated the power to create money to the banking system without a charge.

5.11 The banks do not pay a license fee or a payment charge for their reserves. Thus the raw materials the banks use cost them nothing." (Emphasis added), see Page 23 of **Exhibit** C. Plaintiff's statement is derived from the technical descriptions of banking practices found in Money Facts, published in 1964 by the house banking committee, which is hereby incorporated by reference in this civil action as **Exhibit** C.

5.12 The organic laws of this nation requires that "no state shall... make anything but gold and silver coin a tender in payment of debts", Constitution for the united states of America, Article I, § 10. The Federal Reserve Banking Scheme is based upon the deliberate and planned raising of interest rates by the Federal Reserve Bank of New York in October of 1929, and the subsequent deliberate crash of the stock market by them in 1929, called black Monday in order to get greater control over American government.

5.13 The Bankers, stockholders in the Federal Reserve Bank, then with their proxies and agents in the government, the criminal element in government, hereinafter CEG, forced the UNITED STATES into a permanent state of declared national emergency on March 9, 1933, in the Emergency Banking Bill, 48 Stat.1, Public Law 89-719; declared by President Roosevelt, being bankrupt and insolvent in Several Executive Orders No. 6073, 6102, No. 6101, No. 6260 and was later seconded by Congress on June 5, 1933 with the passage of HJR 192, making all Americans the 'enemy' in paragraph 5(b) of the Trading with Enemies Act.

5.14 Please see Senate Report 93- 549, dated 1973, for confirmation of the above. Said Bankers then placed the UNITED STATES into receivership based upon the Bankruptcy filed by an Act of Congress, HJR 192, dated June 5, 1933.

5.15 Through the above described actions by the bankers and American government officials who committed acts of treason against the American people, the bankers, through their manipulation of Congress and President Roosevelt in 1933, the Bankers obtained control over our currency system, forced us into bankruptcy and created a new government under the bankruptcy, with new emergency powers of the reconstituted government, see Senate Report 93-549.

5.16 The new currency, after the bankruptcy in 1933, became a debt instrument, which the American people have to pay with no backing by gold and silver, as required under Article I, § 10 of our Federal Constitution. All bank loans in the continental United States are fraudulent in their very nature because the Federal Reserve Notes they are based on are only based upon book keeping entries by the bankers and represent no value, and no valuable consideration and no pledging of the banks assets.

5.17 The original mortgage is therefore chattel paper with no valuable consideration and therefore the whole mortgage contract is based upon fraud and a lack of valuable consideration since Federal Reserve Notes have no intrinsic value whatsoever, and are just bookkeeping entries under the 1933 bankruptcy. The original loan documents designated US dollars or lawful money of the United States and not Federal Reserve notes or commercial paper as the legal tender loaned.

5.18 If said currency, Federal Reserve Notes, were backed by something of intrinsic value, then the currency could be considered to be valuable consideration, because the currency, could be exchanged for something of recognized value, and the lender of the Federal Reserve Notes, would then be pledging their own assets in the transaction.

5.19 The banks involved in this matter, are committing fraud and fraudulent conversion by attempting to transform the mortgage, backed by no valuable consideration, into a security device which can be used to obtain a lien and subsequent ownership of my property, all without lawful money which is mandated by Article I, § 10 as stated above and without due process of law; a trial by the jury of my peers, as required by the Fifth and Seventh Amendments respectively.

5.20 The Defendant's predecessor-in-interest did not loan anything of substance or intrinsic value, but they loaned their own credit in the transaction. Federal Reserve notes are bank credit and as such are not backed by gold or silver coin as required under Article I, § 10 of the US Constitution. This is an absolute requirement pursuant to the ruling by the US Supreme Court in *Woodruff v. Mississippi*, 162 US 291, 16 S.Ct. 820; 40 L.Ed. 973:

"the power to borrow money, simply, meant the power to borrow whatever was money according to the Constitution of the United States and the laws passed in pursuance thereof, and the power to issue negotiable bonds included the power to make that payable in such money. This the law presumed, and to proceed on an implication to the contrary was to deny the holders of these bonds, subsequent to their purchase, a right arising from the Constitution and laws of the United States."

*Id.*.

5.21 The original lender contracted with this Plaintiff to loan Plaintiff Legal Tender "Dollars" of U.S. currency. The contracting parties contracted that the loan would be repaid in Legal Tender "Dollars". The contracting parties did not enter into a contract to loan or borrow and repay either credit or Negotiable Instruments. Mortgage Defendants failed to lend this Plaintiff any real asset or any Legal Tender "Dollars" as lawfully defined by the US Congress, and Article I, § 10 of the United States Constitution in the form of US Silver Coin.

5.22 The U.S. Congress, in deciding what was to be Legal Tender for this country, by act on April 2nd, of 1792, defined the term "Dollar" to mean specifically a coin issued by the U.S. Government containing 371 4/16 grains of pure silver. As Mortgage Defendants have failed to lend Legal Tender within the Lawful definition of the term, the contractual agreement between these parties was breached by the original lender and anyone attempting to collect a debt pursuant to said note and deed of trust, including the Defendants.

5.23 Furthermore, the common law does not recognize a contract to be valid where there is no valuable consideration, such as this case, where nothing of substance or value was loaned in the transaction. The "money" loaned was bank credit, created by a series of bookkeeping entries by the original lender and subsequently by the Defendant.

5.24 This fraudulent mortgage can, under this fraudulent banking scheme, thus be converted into a fraudulent lien based upon no valuable consideration, obtained by establishing a banking system of bookkeeping entries for commercial Federal Reserve 'credit' with no backing by gold or silver, as required by Article I, § 10 of our Federal Constitution, or anything of substance or intrinsic value and then placing a fraudulent lien or security device on our property and using this fraudulent devise, while claiming to be the holder in due course on the note and deed of trust.

5.25 The bankruptcy of the UNITED STATES under HJR 192 removed gold backing from the currency as of June 5, 1933, under said Act of Congress, and set up the fraudulent and pernicious Federal Reserve bankruptcy system. The Defendants, as a result, operate under a presumptive claim of ownership, which is ultimately based upon no valuable consideration and upon the Bankruptcy of the UNITED STATES declared by Congress on June 5, 1933, under House Joint Resolution 192, dated June 5, 1933 and the State of Declared National Emergency declared by Congress on March 9, 1933.

5.26 Both of these events forever altered the structure and fabric of American government as it was established by the founding fathers during and after the period of the revolutionary war from 1775 until about 1792 and gave, through sedition, a financial stronghold to the international bankers who hold a stockholders position in the Federal Reserve Bank/System, and who, are belligerent foreign principals in a dramatically altered American Government/ Federal Reserve Banking scheme that is operating without the authority of the American people.

5.27 Full disclosure was never given to the American people of the names of the creditors or the nature of the obligation the American people have been forced to take on under the Federal Reserve Banking Scheme and the bankruptcy of the United States and state governments as accommodation parties. See also Senate report 93-549, published in 1973.

5.28 Nowhere in the blueprint for the federal and state governments, our American Constitution, is there a provision for foreign or domestic financiers and industrialists to take over the reins of government through a perpetual state of bankruptcy, with no named creditors, no financial reorganization plan and no accountability by elected officials for having paid the Federal Reserve billions of dollars and billions of dollars worth of gold, for their service of "loaning money into circulation" and thereby bankrupting the federal and state governments.

5.29 Please see **Exhibit** C, Money Facts, a report by the House Banking Committee and Currency Committee, published in 1964, page 9 for a discussion of how banks get money and how their Reserves are created.

5.30 The Defendants used this Federal Reserve Banking scheme to create money out of the promissory notes and a series of bookkeeping entries, which amounts to commercial credit, rather than loaning something of substance or value, as described above at paragraph 22. As a result, the original mortgage is void, unenforceable and without force and effect, because of a lack of valuable consideration, and breach of contract.

5.31 The best sources of information on the origins and use of credit as money are in Alfred Marshall, MONEY, CREDIT & COMMERCE 249-251 (1929) and Charles P. Kindleberger, A FINANCIAL HISTORY OF WESTERN EUROPE 50-53 (1984). A synthesis of these sources, as applied to the facts of the present case, is as follows:

5.32 As commercial banks and discount houses (private bankers) became established in parts of Europe (especially Great Britain) and North America, by the mid-nineteenth century they commonly made loans to borrowers by extending their own credit to the borrowers or, at the borrowers' direction, to third parties. The typical form of such extensions of credit was drafts or bills of exchange drawn upon themselves (claims on the credit of the drawees) instead of disbursements of bullion, coin, or other forms of money. In transactions with third parties, these drafts and bills came to serve most of the ordinary functions of money.

5.33 The third parties had to determine for themselves whether such "credit money" had value and, if so, how much. The Federal Reserve Act of 1913 was drafted with this model of the commercial economy in mind and provided at least two mechanisms (the discount window and the open-market trading desk) by which certain types of bankers' credits could be exchanged for Federal Reserve credits, which in turn could be withdrawn in lawful money. Credit at the Federal Reserve eventually became the principal form of monetary reserves of the commercial banking system, especially after the suspension of domestic transactions in gold in 1933. Thus, credit money is not alien to the current official monetary system.

5.34 The bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of the Defendant's apparent assertions that it lent its funds, credit, or money to or on behalf of the Plaintiff, thereby causing them to owe the Defendant money.

According to the standard bookkeeping entries used by banks and application of GAAP, the Plaintiff allegedly was to tender some form of money, securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of exchange, loosely defined), collectively referred to herein as "money," to repay what the Defendant claims was the money lent to the Plaintiff.

5.35 Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. This would show that the bank received the customer's signed promise to repay as an asset, thus monetizing the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank, see Exhibit E, MODERN MONEY MECHANICS, page 6, right column, second paragraph, and page 7, third diagram.

5.36 The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its money or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank created funds for the customer's transaction account without the customer's permission, authorization, or knowledge and delivered the credit on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer money.

5.37 If Defendant's response to this line of argument is to the effect that it acknowledges that it lent credit or issued credit instead of money, one might refer to Thomas P. Fitch, BARRON'S BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "Credit banking," 3. "Bookkeeping entry representing a deposit of funds into an account." But Defendant's loan agreement apparently avoids claiming that the bank actually lent the Plaintiff money.

5.38 **Second**; On information and belief, the assign, the Mortgage backed Security or an undisclosed third party note buyer, allegedly purchased the notes and mortgages for the house, which is the subject of this dispute from WASHINGTON MUTUAL BANK. While acting on behalf of JP MORGAN CHASE BANK, NA, their agents attempted to collect payment on the

two notes even though JP MORGAN CHASE BANK, NA's principal, The Mortgage Backed Security, or an undisclosed third party note buyer if the note was sold a second or third time, does not have the right of subrogation, as a stranger to the transaction.

5.39 As the assign, an undisclosed third party note buyer, now acting through an agent, JP MORGAN CHASE BANK, NA, made a demand for payment and then moved for foreclosure on the notes even though they do not have the right of subrogation as a party who is not a cosigner to the original notes. This action by the original lender selling the notes to a stranger to the transaction and is, therefore, an unlawful act, and a breach of trust, see *Aetna L. Ins, Co. v. Middleport*, 124 US 534.

5.40 Plaintiff sent the Defendants a written request to validate the debt, see Exhibit G. They did not respond to my request. The lender is currently in default on my request that they provide a validation of the debt and prove that they have the right of subrogation.

5.41 The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603. The Defendants cannot produce a verified claim for which relief can be granted.

5.42 **Third**; The mortgage notes and mortgages cannot form the basis of any kind of lien or security against my private property because I am the assignee to the original land patent which was applied for and obtained by my predecessor -in -interest, who filed the original petition for the land patent and received the original land patent, without the Defendants in this matter ever having filed a claim against the original land patent.

5.43 Furthermore, the US Supreme Court has ruled that when land which has been patented by a land owner, or a predecessor -in -interest, the state, or any other entity, person, natural or artificial or party such as a bank or corporation, is barred from making any claim against the land. Adverse claims cannot attach to patented land pursuant to the acts of the Federal Government or the British government in the earlier days of settlement of the original 13 states authorizing said patents.

5.44 The private property in question, which is defined in Exhibit A, is also a parcel of land that was once a part of a larger tract of land patented by my predecessor -in -interest in a land patent procedure. Thus, the issuance of a Federal Land Patent barred any future claims against the land. Please see *Summa Corp. v California Ex Rel*, 104 US 1751 (1984), which states;

> "We hold that California cannot at this late date, assert it's public trust easement over petitioner's property, when petitioner's predecessors -in -interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the act of 1851."

5.45 Claims by government agencies or states or counties are no different than claims by private corporations and banks, such as the Defendants are. Neither the Defendants nor the original mortgage company filed any sort of competing claim in the patent proceeding for this land. Therefore, under the above-cited US Supreme Court ruling and many others, neither the Defendants nor the original mortgage holder has any legitimate or lawful claim to the land. We, the Plaintiffs, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, the Plaintiffs in this matter, have allodial title, which is the highest title anyone can have on their land. No one has superior title.

5.46 As the Plaintiffs, we, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, seek to quiet title against all claims by Defendants to any security interest, lien, estate, right, title or interest, in my property. The Defendants adverse fraudulent claims are without any rights whatsoever, without any foundation in law, and cannot in any way extinguish our lawful common law exclusive claim to my own private allodial property.

5.47 It was further stated by the US Supreme Court, in *Fairfax v. Hunter*, 7 Cranch 603, 3 L. Ed. 453. that land owners have full use and dominion of their property, dominium directum et utile, which means allodial title. Our land patent was originally derived from the land grant issued and confirmed by The Board of Land Commissioners, the predecessor to the Bureau of Land Management, said land patent was confirmed and issued by the Board of Land Commissioners under the authority of Congress. Said land was then transferred under a series of secondary transfers until we purchased the subject property in October 1985. It has also been stated many times by the US Supreme Court that patented land cannot be collaterally attacked. We have the exclusive patent to our land, which has been brought forward in our name.

CIVIL COMPLAINT for money damages
and rescission of mortgage contract          21

5.48 **Fourth**; We believe that the organic laws of the united States of America, including all founding documents and charters give us sovereignty and thereby a right to private citizenship, property rights that are independent and free of any undisclosed security interest claimed by government and a right to access to courts, which are derived from the people of the body politic, which created the government and all the rights and freedoms which are associated with the organic laws created by the body politic.

## VI. <u>Holder in Due Course</u>.

6.1 There shall be two originals of the above captioned process. The District Court of the United States for the Northern District of California shall be the holder in due course of one original, and Lawrence Munar Asuncion and Maria Estrella C. Asuncion shall be the holder in due course on the second original. Both parties shall have equal standing as the holder in due course of an original.

## VII. <u>Additional Evidence And Authorities Supporting The Plaintiffs Claims</u>.

7.1 It is well understood, in the mortgage banking industry that banks buy notes and deeds of trust for pennies on the dollar, and do not incur a financial loss or damages as a result of a borrower failing to repay a bank loan. This is true because the actual cost of creating money is negligible, and "the raw materials the banks use cost them nothing", see **Exhibit** C, page 23, The House Banking and Currency Committee Report, issued in September 1964. It should be further understood that banks endorse the notes with an allonge and deposit the promissory note into a bank account in the name of the borrower, see **Exhibit** D.

7.2 In addition, the Defendants, including JP MORGAN CHASE BANK, NA, have acted in pursuance of enforcement of a bank loan, which is built on a loan of credit and predicated upon the conversion of a promissory note, signed by the Plaintiff, which was turned into a cash deposit by the original lender, and which was used to fund the loan, See **Exhibit** E, selected pages from Modern Money Mechanics, published by the Federal Reserve Bank of Chicago.

7.3 CPAs and bank officers are very aware that the borrower and the lender in a home loan create a mutual loan between the lender and borrower, based upon the fact that neither

depositor money nor pre-existing bank deposits or bank assets are used to fund the loan. Instead, the bank creates a series of book keeping entries designed to reflect the economic activity of the bank loan and supply funding from the borrower's promissory note. The promissory note is the only asset in the lending process that has any cash value.

7.4 The note represents the future earnings potential of the borrower, and thereby has cash value. Please see **Exhibit** F, at the last page, a copy of moving papers filed in court, by a Bank, in which they accidentally revealed that they rubber stamped the back of the note with the words "pay to the order of", thereby converting the promissory note into a draft or check, changing the costs and the risks of the loan, and creating a bank deposit from the note. This proves that the bank loan is a mutual loan between the lender and the borrower.

7.5 This is done because the currency in circulation today is not backed by silver and gold and they have to create an accounting system that records the transaction without revealing too much to the public about the source of the funding for the fiat currency in circulation. The banks are given the exclusive powers to create money under the Federal Reserve Act of 1913 and do not have any actual costs involved in creating this currency, See **Exhibit** C, page 23.

7.6 The Defendant's attorneys have compounded the issues raised in this matter by failing to obtain a court order to authorize foreclosure and to force us out of the subject land and home, even though the Defendants and each of them, including JP MORGAN CHASE BANK, NA, are required to obtain such a court order, pursuant to California Civil Code § 2924. Additionally, if they had filed such a civil action in court as required under California law, the court would have lacked jurisdiction, since the Defendants have no standing in court and are not a real party-in-interest because they do not have the right of subrogation and have failed to produce the original note.

7.7 That, in the alternative, without first producing the original of the Promissory Note signed by the Plaintiff /borrower or explaining the loss or destruction of the Note via the testimony of a person with knowledge of the facts and circumstances surrounding the loss or destruction of that instrument, the original lender WASHINGTON MUTUAL BANK, the

purported assignee of the original lender whose name is unknown at this time to the Plaintiff, the Defendant loan servicer, on information and belief the Defendant JP MORGAN CHASE BANK, NA, could not lawfully non-judicially foreclose the Plaintiff/Borrower's interest in the subject property or sell his property at the planned Trustee's sale.

7.8 On eight different occasions the Ninth Circuit Court of Appeals has ruled that the only way to perfect a security interest in a debt obligation is by possession of the note, please see *In re Matter of Staff Mortg. & Inv. Co.*, 550 F. 2d 1228, (Ninth Cir. 1977); *Bear v. Coben*, (In re Golden Plan of Ca., Inc)* 829 F.2d 705(Ninth Cir. 1986); and *In re Bruce Farley Corp.*, 612 F. 1197 (Ninth Cir. 1980). Similar rulings were handed down by the Sixth Circuit Court of appeals, see *Motobecane America, Ltd v. Patrick Petroleum, Co.*, 791 F. 2d 1248, (Sixth Cir., 1986); *In re Maryville Sav. & Loan, Corp.*, 743 F 2d 413 (Sixth Cir. 1984). The Eighth Circuit Court of Appeals issued a similar ruling, see *In re Holiday Intervals, Inc.*, 931 F. 2d 500, (Eighth Cir. 1991).

7.9 A growing number of federal judges in California, Ohio and elsewhere have recently compelled the banks to produce the note and produce evidence that they are the holder-in-due-course of the note as a condition to a foreclosure. With respect to the rules of evidence, the creditor must show that they are the holder with evidence that does not violate the hearsay rule, as discussed in a bankruptcy case in California, which involved a note and deed of trust, see In re Vargas, 396 B.R. 511, at 517-519 (Bankr. C.D. Cal 2008).

7.10 Furthermore, it was also ruled in another bankruptcy case, that the servicing agent does not have standing to enforce the note, see *In re Hwang*, 396 B.R. 757, (Bankr. C.D. Cal. 2008). See *Deutsche Bank Nat'l Trust Co. v. Steele*, 2008 WL 111227 (S.D. Ohio, January 8, 2008, in which the federal judge ordered Deutsche Bank to produce evidence that they are the holder of the note. See also *In re Foreclosure Cases*, 521 F Supp. 2d 653, (S.D. Ohio, 2007), in which the federal judge stated that the creditor must show standing as follows:

"[I]n a foreclosure action, the Plaintiff must show that it is the holder of the note and the mortgage at the time that the complaint was filed."

7.11 For similar decisions in bankruptcy cases see also *In re Hayes*, 393 B.R. 259 (Bankr. Mass. 2008), *Nosek v. Ameriquest (In re Nosek)*, 286 Br. 374 (Bankr D. Mass. 2008) in which it was revealed that Ameriquest was not the holder of the note and mortgage, but only the servicer. The law firm representing Ameriquest was fined $ 100,000.00 by the judge for making material misrepresentations to the court about their clients status. See *In re Schwartz*, 366 B.R. 265 (Bankr. D. Mass. 2007) in which there was no evidence presented identifying the actual holder of the note.

7.12 Neither JP MORGAN CHASE BANK, NA nor anyone else have supplied any material evidence that they are the holder in due course of the note and deed of trust. This is an established requirement and has been a factor in determining whether or not a particular creditor has standing to sue for recovery of damages in a foreclosure. To recover on a promissory note, the Defendant must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the Defendant is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. (See *In re SMS Financial LLC. v. Abco Homes, Inc.*, No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)

7.13 In *Carnegie Bank v Shalleck*, 256 N.J. Super 23 (App. Div 1992), the Appellate Division held, "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302).

7.14 Since no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder-in-due-course. Due process dictates that the Plaintiff prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the Plaintiff is the owner and holder of the alleged note, and prove that a certain balance is due and owing on any alleged note.

7.15 Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. See also *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 (9th Cir 1977), "Under the Uniform Commercial Code, the only notice sufficient to

inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. *In re Investors & Lenders, Ltd.*, 165 B.R. 389.

7.16 Additionally, a more important issue is the question of whether or not the Mortgage backed Security or an undisclosed Third Party Note Buyer, or any one else who may have acquired the note recently, and who does not have the right of subrogation as a stranger to the transaction, see 73 AmJur2d § 90, has the power to enforce the note and deed of trust.

JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC is a bank, which claims to have foreclosure powers, whereby that bank claims to own the Notes and Deed of Trust associated with the bank loans for my property.

7.17 However most of the time a residential mortgage, including the Note and Deed Of Trust, has been sold at least once in the first six months, meaning that JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC is only a trustee or loan servicer at this stage and has refused and failed to produce the note, which means that they do not have possession of the original note and that means that they have sold the original note.

Thus they cannot produce the original note because they do not have custody of it.

7.18 The fact that the note was sold means that whoever bought the note does not have the right of subrogation as a stranger to the transaction. This question was explored in great depth in *Aetna L. Ins. Co. v. Middleport*, 124 U.S. 534, which stated that only a cosigner, or someone who is acting to protect their own junior lien or an insurance company has the right of subrogation. "Subrogation in equity is confined to the relation of principal and surety and guarantors, to cases where a person to protect his own junior lien is compelled to remove one which is superior, and to cases of insurance....Anyone who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer.". (emphasis mine) *Aetna Life v. Middleport*, 124 US 534, quoting *Suppiger v. Garrels*, 20 Bradwell App Ill. 625.

7.19 Any undisclosed Third Party Note Buyer who may be involved was clearly never a cosigner or a surety on the original Promissory note. Attorneys, have an auxiliary role to play in this matter, assisting JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC in their unlawful activities, by aggressively pursuing a foreclosure of the subject property, even though their Undisclosed Third Party Note Buyer does not have the right of subrogation as a stranger to the transaction.

7.20 If defendant JP MORGAN CHASE BANK, NA, or CHASE HOME FINANCE, LLC, sold the original note to an undisclosed Third Party Note Buyer, that party does not have the right of subrogation, as a stranger to the transaction. The multiple investors have never acted as a cosigner or surety to the debt, so they lack the right of subrogation. As a result, The Mortgage Backed Security or Third Party Note Buyer has no right of subrogation.

7.21 It is well understood, in the mortgage banking industry that banks buy notes and deeds of trust for pennies on the dollar, and do not incur a financial loss or damages as a result of a borrower failing to repay a bank loan. This is true because the actual cost of creating money is negligible, and "the raw materials the banks use cost them nothing", see **Exhibit** C, page 23, The House Banking and Currency Committee Report, issued in September 1964.

7.22 In addition, the Defendants, including JP MORGAN CHASE BANK, NA, have acted in pursuance of enforcement of a bank loan, which is built on a loan of credit and predicated upon the conversion of a promissory note, signed by Plaintiff, which was turned into a cash deposit by the original lender, and which was used to fund the loan, see **Exhibit** D, a copy of a promissory note entered into with a lender who sold the original note to COUNTRYWIDE, FSB, covering a loan on an Arizona property.

7.23 On the last page, *id.*, we see the endorsement on the Allonge page, which appears to be a standard way of doing business for COUNTRYWIDE, FSB and see **Exhibit** E, selected pages from Modern Money Mechanics, published by the Federal Reserve Bank of Chicago. CPAs and bank officers are very aware that the borrower and the lender in a home loan create a mutual loan between the lender and borrower, based upon the fact that neither depositor money nor pre-existing bank deposits or bank assets are used to fund the loan. Instead, the bank creates

1   a series of book keeping entries designed to reflect the economic activity of the bank loan and

2   supply funding from the borrower's promissory note.

3        7.24 The promissory note is the only asset in the lending process that has any cash value.

4   The note represents the future earnings potential of the borrower, and thereby has cash value.

5   Please see **Exhibit** F, at the last page, a copy of moving papers filed in court, by a Bank, in

6   which they accidentally revealed that they rubber stamped the back of the note with the words

7   "pay to the order of", thereby converting the promissory note into a draft or check, changing the

    costs and the risks of the loan, and creating a bank deposit from the note.

8        7.25 This proves that the bank loan is a mutual loan between the lender and the borrower.

9   Please see **Exhibit** F, a copy of a promissory note with WORLD SAVINGS BANK, FSB, with

10  an endorsement stamp on the back of the note, which states "pay to the order of" proving that the

11  note was deposited into a bank account and proving that the note was changed into a draft, which

12  makes it a mutual loan between the lender and the borrower. As a result the debt has been paid.

    Also the terms of the note were modified without a meeting of the minds and agreement by me

13  and without full disclosure.

14

15       7.26 This is done because the currency in circulation today is not backed by silver and

16  gold and they have to create an accounting system that records the transaction without revealing

    too much to the public about the source of the funding for the fiat currency in circulation. The

17  banks are given the exclusive powers to create money under the Federal Reserve Act of 1913 and

18  do not have any actual costs involved in creating this currency, See **Exhibit** C, page 23.

19       7.27 The Defendant's attorneys have compounded the issues raised in this matter by

20  failing to obtain a court order to authorize foreclosure and to force us out of the subject land and

21  home, even though the Defendants and each of them, including JP MORGAN CHASE BANK,

22  NA, are required to obtain such a court order, pursuant to the Seventh Amendment to the US

    Constitution.

23

24       7.28 Additionally, if they had filed such a civil action in court as required under

25  California law, the court would have lacked jurisdiction, since the alleged note holder, The

Mortgage Backed Security, does not have standing in court and are not a real-party-in-interest because they do not have the right of subrogation and have failed to produce the original note. This is also true if there is an undisclosed note buyer who is a holder of the note.

7.29 California state courts tend to favor the banks in state courts often setting aside the law in order to give the banks favorable treatment. As a result, I can only file documents in federal court to seek a legal remedy in this matter. The actions taken against me by the Defendants, including JP MORGAN CHASE BANK, NA, to attempt loan foreclosure on the subject property is a violation of my property rights in pursuance of the foreclosure of the subject property. It appears that the Defendant, JP MORGAN CHASE BANK, NA has failed to produce the original notes and does not have the right of subrogation as a stranger to the transaction, and therefore has no right, title or interest to the subject property.

VIII. <u>Claims Upon Which Relief Can Be Granted.</u>

8.1 Fifth Amendment/ Due Process Violations. The Defendant has violated our right to be free from deprivation of our property without due process under the Fifth Amendment, an established right. When it comes to being stripped of rightful ownership of our land by someone who has no standing to sue and no right of subrogation, the Defendants have committed a due process violation.

8.2 There is no evidence regarding who is the actual holder of the note or that JP MORGAN CHASE BANK, NA, or CHASE HOME FINANCE, LLC is the holder of the notes or one of their agents or principals is the holder of the notes, therefore the Defendants do not have standing to foreclose. "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed." See *Norton vs. Shelby County*, 118 US 425, 442.

8.3 The Defendant has violated Plaintiff's right to exercise Plaintiff's rights to ownership and enjoyment of my land granted property. Plaintiffs have a right to be free to full use and dominion of our property without being deprived of our rights under the land grant which has the force and effect of a treaty. We also have a right to ownership of patented land without having our land patent be collaterally attacked by the Defendants.

### FIRST CAUSE OF ACTION.

(multiple Violations of Federal and State Consumer Laws)

8.4 We, Plaintiff's, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, hereby allege and re-allege all of the foregoing Paragraphs as part of this Cause of Action with the same force and effect as if fully set forth herein.

8.5 Per diem interest was collected from 07/24/2006, and this is prior to the closing settlement date of 07/25/2006 resulting in an overcharge of $190.70 on the HUD-1. The funding date is the same as the closing date of 07/25/2006, this does not allow for a right of rescission period for the borrower as required by 12 CFR §226.23, which is a violation of the truth in lending Act 12 USC § 1601. The three day right of recession is an absolute right under the above cited law.

8.6 Some underwriting violations and predatory lending practices occurred within this loan whereby practices engaged in by the lender that are widely identified as predatory include:

(1) fraudulent practices that conceal the facts of the borrower's obligation and/or income;

(2) steering a borrower to a high-cost loan when they could qualify for a lower-cost loan or as in our case we were already in a lower cost loan, which was replaced with an adjustable rate note that dramatically increased our monthly payment to double the initial monthly payment after two years;

(3) making a loan that the borrower cannot afford to repay;

(4) making a loan to a borrower that provides no actual benefit for the borrower;

(5) imposing a prepayment penalty on a loan without providing benefit to the borrower;

(6) unfairly stripping borrower equity through excessive points and fees or imposing overpriced, unnecessary add-ons such as lump-sum credit life insurance as a condition of a loan;

(7) flipping loans by inducing repeated refinancing, without benefit to the borrower, in order to generate fees which is the scheme used by the Defendants against Plaintiff's Rights..

8.7 The lender processed and approved this loan under a 'Stated Income' program that requires employment verification but does not require income verification. The duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or had a likelihood of defaulting on this loan they have a fiduciary duty to the borrower to NOT place them in that loan (in harms way). In Plaintiff's case the broker knew that our monthly payment would double in two years and that we would be better off staying in our existing loan, and he still encouraged us to refinance and rushed into signing by misrepresenting the terms of the loan.

8.8 Additionally, the broker has a contractual duty of good faith and fair dealings with the lender, which would be breached if they knowingly placed a loan with the lender failing to disclose the material fact that the borrower will likely default or file bankruptcy.

8.9 If established, the existence of a fiduciary duty gives rise to a duty of fair and honest disclosure of all facts which might be presumed to influence the consumer to act. See *Barrett v. Bank of Am.*, 229 Cal. Rptr. 16 (Ct.App. 1986).

The lender must adhere to their duty to be fair and honest in their disclosures of all facts which might be presumed to influence the borrower's decision to accept the loan.

8.10 In most cases the lender will be using the "stated loan" to get the borrower into a loan that they otherwise could not afford. The lender knows the reason the borrower could not qualify for the needed loan based on their actual income is because there is a high probability that they will default on the loan. Thus the borrower cannot afford the loan without the lenders help in fudging the numbers. The lender has disclosed the fact that he is fudging the numbers to enable the borrowers to get into the home they want, however what he does not disclose is the fact that there is an extreme likelihood that the borrower will default on the loan.

8.11 Thus the Defendant's have breached their fiduciary duty to disclose those facts that would presumably influence the Plaintiff's. When there is a duty to disclose, failure to do so should give rise to a tort cause of action for nondisclosure, or the silence may be deemed a misrepresentation. Such claims can be used to invalidate the underlying mortgage transaction or to recover money damages to offset any delinquency.

8.12 **Unconscionability**. The common law contract defense of unconscionability may be applicable, when either the mortgage terms are unreasonable favorable to the lender or certain aspects of the transaction render it unconscionable. *In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002); *Hager v. American Gen. Fin. Inc.*, 37 F.Supp. 2d 778 (1999). For example, a Connecticut court found a second mortgage contract to be unconscionable based on the facts that:

> (1) The Defendant's financial situation made it apparent she could not reasonably expect to repay the mortgage;

> (2) At the closing, the Defendant was not represented by an attorney and was rushed by Plaintiff's attorney to sign the loan document;

> (3) And there was an absence of meaningful choice on the part of the Defendant. This loan closure was similar in character to the case described above.

8.13 It is the duty of the lender if a responsibility to perform their own diligence to determine if a customer is being placed in a loan that is legal, properly disclosed, is the best loan for the consumer given their financial circumstance and affordable over the life of the loan if present financial positions hold steady. If the lender is aware that the borrower would be better off with another type of loan that the lender offers, they have violated their duty to the consumer and such act of deception would likely be considered fraud on the consumer and a predatory lending practice. The original lender has violated their duty to the borrower by:

> (1) Placing the borrowers into their current loan product without regard for other
>
> products that might have suited the borrower(s) better;

CIVIL COMPLAINT for money damages
and rescission of mortgage contract                 32

(2) Placing the borrower(s) into a loan whereby it was likely the borrowers would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur,

(3) Placing borrower(s) into a loan, not bothering to verify employment or to verify income,

(4) Placing the borrower(s) into a loan when the real estate market was in a free fall, and it was easy to foresee that such would continue, endangering the borrowers financial stake in the home. Courts have ruled that this type of predatory lending is unconscionable and misleading. See *Am. Bankers' Ins. Co. v. Wells*, 819 So. 2d 1196 (Miss. 2001); *Barrett v. Bank of Am.*, 229 Cal. Rptr. 16 (Ct. App. 1986); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545 (D. V.I.)

8.14 This loan failed the TILA APR test in violation of the Truth In Lending Act, 15 USC, 1601, and it's implementing regulations, at 12 CFR § 226.22(a)(2),(4)) The annual percentage rate (APR) is 8.634%. The disclosed APR of 7.716% is not considered accurate because it is more than 1/8 of 1 percentage point above or below the APR as determined in accordance with the actuarial method.

8.15 This loan failed the TILA right of rescission test. Closed-end, see (12 CFR § 226.23(a)(3)), Open-end (12 CFR § 226.15(a)(3)). The funding date is before the third business day following consummation.

The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by 12 CFR §226.23 or §226.15, or delivery of all material disclosures, whichever occurs last. The notice of the right to rescind did not comply with the above cited regulations in The Truth in Lending Act.

8.16 This loan failed the Good Faith Estimate disclosure date test. (24 CFR §3500.7)

The loan has a Good Faith Estimate disclosure date that is not within three business days after the application date, or is after the closing date. The lender shall provide all applicants for a federally related mortgage loan with a good faith estimate of the amount of or range of charges for the specific settlement services the borrower is likely to incur in connection with the settlement.

8.17 The lender shall provide the good faith estimate required under this section either by delivering the good faith estimate or by placing it in the mail to the loan applicant, not later than three business days after the application is received or prepared. Calculations take into account a submitted preference that this test treat the creditor's office as not being open to the public on Saturdays for carrying on substantially all of its business functions, as described in 24 CFR §3500.2.

8.18 This loan failed the TILA finance charge test. (12 CFR § 226.18(d)(1)). The finance charge is $2,561,176.55. The disclosed finance charge of $2,223,309.48 is not considered accurate because it is understated by more than $100. As a matter of fact the finance charge is understated by more than a quarter of a million dollars.

8.19 This loan failed the TILA rescission finance charge test. (12 CFR § 226.23(g)(1)). The finance charge is $2,561,176.55. The disclosed finance charge of $2,223,309.48 is not considered accurate for purposes of rescission because it is understated by more than 1/2 of 1 percent of the face amount of the note or $100, whichever is greater.

<u>SECOND CAUSE OF ACTION</u>.

(Quiet Title)

8.20 We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, the Plaintiffs allege and re-allege the foregoing Paragraphs as Paragraphs of this Cause of Action with the same force and effect as if fully set forth herein.

8.21 **First**. The Defendants do not have a security interest in my property because of the lack of the right of subrogation. They claim that The Mortgage Backed Security or an undisclosed Third Party Note Buyer's purchase of the notes from the original lender WASHINGTON MUTUAL BANK forms the foundation of their authority to take my property by a foreclosure action. There is no right of subrogation for the Mortgage Backed Security or any other party, because, on information and belief, they have purchased the original notes as a stranger to the transaction and as someone who is a mere volunteer and not secondarily liable.

8.22 If all Defendants deny that they are the holder of the note, without revealing who the note holder is, or they fail to bring forward the original promissory note then they still are representing a party who does not have the right of subrogation. Additionally, there is no valuable consideration, since only Federal Reserve Notes were received, which are not backed by any hard asset of the bank or anything which has any redemption value. I do not remember ever signing over a security interest, based upon valuable consideration to the Defendants or anyone else.

8.23 The Mortgage backed Security or an undisclosed third party note buyer is acting through an agent, the Defendants including, JP MORGAN CHASE BANK, NA, since they purchased the original notes for an undisclosed amount, even though they were not a cosigner on the original notes, meaning they did not have the right of subrogation. As a result of their having sold the original notes and thereby, the note buyer not having the right of subrogation, said undisclosed Note Buyer, is a stranger to the transaction and has no right, title, estate or interest to our land and home.

8.24 ANY FORECLOSURE ACTION BY THE DEFENDANTS is unenforceable and void ab intio, from the beginning. The Defendants, have a duty, as an alleged creditor to prove that their principal has a right of subrogation if they are a co-signer, and prove that they are a co-signer, if in fact they are, and additionally prove that they have paid the entire debt in full, prior to taking steps to foreclose on my property, the land and home, which is the subject of this civil action.

8.25 The Defendants including, JP MORGAN CHASE BANK, NA, did not do this, and by their failure to prove that their undisclosed Third Party Note Buyer is a co-signer on the original notes and by their failure to prove that said undisclosed Third Party Note Buyer has paid the entire mortgage debt in full, they have failed to perform a duty, which they are required to perform under California law.

"Subrogation in equity is confined to the relation of principal and surety and guarantors, to cases where a person to protect his own junior lien is compelled to remove one which is superior, and to cases of insurance....Anyone who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer.". (emphasis mine)

See *Aetna Life v. Middleport*, 124 US 534, quoting Suppiger v. Garrels, 20 Bradwell App Ill. 625.

8.26 The Defendants, and all of them, including JP MORGAN CHASE BANK, NA's principal, the Mortgage Backed Security (or some other undisclosed Third Party Note Buyer, if the notes were resold), were clearly never cosigners or sureties on the original Promissory note. Attorneys have an auxiliary role to play in this matter, assisting the Defendants including, JP MORGAN CHASE BANK, NA in their unlawful activities, by sending out demands for payment and preparing to file an eviction lawsuit in California courts knowing that they do not have the right of subrogation as a stranger to the transaction. The undisclosed Third Party Note Buyer has never had any right, title or interest in the subject property as a stranger to the transaction.

8.27 The Defendants and their agents and principals violated our right to due process of law, as guaranteed under the Fifth Amendment to the US Constitution by presenting themselves as a party who has a right to enforce the original note, although their Undisclosed Third Party Note Buyer clearly is not now, nor have they ever been a co-signer on the original notes.

8.28 Because the undisclosed Third Party Note Buyer has no right of subrogation, they have no right to enforce the note, and thereby no right to foreclose or to claim any right, title or interest in the subject property. I have a right to expect that anyone who is attempting to foreclose on the property has the right to do so as someone who has standing. Based upon information and belief, the Defendant clearly has never had standing to foreclose, based upon the above analysis and facts.

8.29 Please note that the Defendants and all of them, including, JP MORGAN CHASE BANK, NA, have never claimed that The Mortgage Backed Security or undisclosed Third Party

Note Buyer has the right of subrogation. They have never brought forward evidence that refutes, rebuts, challenges or denies my statement of fact in my constructive notice, that the Defendants including, JP MORGAN CHASE BANK, NA's principal, The Mortgage Backed Security (or an undisclosed third party note buyer), does not have the right of subrogation and the evidence is that they are not a co-signer. California Courts and Federal Courts are bound by the US Constitution and laws passed in pursuance thereof, including U.S. Cosnt. Amdt. 5.

8.30 When there is fraud involved, then any action that flows from that fraud is null and void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio*, out of fraud no action arises. Additionally, if this is true the Defendants are liable for fraud, fraudulent conversion and attempted theft of private property. This claim of ownership of Plaintiff's home and land without a judicial trial by the jury, and without due process of law, access to an appeals process, a final judgment by a court, represents a taking of property without due process of the law in violation of the Fifth Amendment to our Federal constitution and similar provisions in the Northwest Ordinance of 1787.

8.31 The fraud has occurred numerous times by way of correspondence and phone calls from the Defendants and their agents over the last one year, during the year 2009, where they attempted to mislead me into believing that I owed them money and they had a lawful claim to enforce the note, even though they did not because the Mortgage Backed Security does not have the right of subrogation as a stranger to the transaction.

8.32 Please see **Exhibit** B, attached, and incorporated by reference, a copy of a Notice of Default, which states on page one at Paragraph one, that the Defendants and the agents and principals have the power to foreclose and that Plaintiff's have to pay the past due amounts, even though they have not complied with all of the requirements under the Seventh Amendment to litigate title, whenever the value in controversy exceeds twenty dollars, requiring that the lender obtain a court order from a court of record prior to selling or transferring the subject property in a foreclosure sale, and even though they do not have possession of the notes, and their principal, the undisclosed third party note buyer, does not have standing to sue for foreclosure as a stranger to the transaction.

8.33 Also, the Notice of Default is fraudulent because it asks for a payment, even though the full amount of the debt was paid when the original lender rubber stamped the words "pay to the order of" and deposited the promissory notes into a checking account in my name without full disclosure, see **Exhibit** E, page Six, right hand column, paragraph #2, <u>Modern Money Mechanics</u>, a publication issued by the Federal Reserve Bank of Chicago.

8.34 The most intense and deliberate acts of fraud occurred in the months of December 2009 to the present, by way of written and telephonic communications, threatening to foreclose, even though the Defendants and all of them lack standing as strangers to the transaction. One of the notices that was sent, a Notice of Default, on June 8, 2010, attached as **Exhibit** B, which states, in the first and second paragraph on page 1 that the Plaintiff's property is in foreclosure and the subject property may be sold without any court action.

8.35 The entire document is filled with false and misleading statements but the first paragraph is designed to mislead me into believing that Plaintiffs owe money to the beneficiary or trustee and that my only option is to pay the debt and that the beneficiary is empowered and has the standing to foreclose. The Defendants and their agents, through the above described document, are engaged in a willful and deliberate act of making false and misleading statements designed to mislead Plaintiffs and make Plaintiffs rely on their statements to Plaintiff's detriment, so Plaintiff will be influenced by Defendants written communications to take actions that are detrimental to Plaintiffs, whereby Plaintiffs either pay money for alleged past due payments of the note and deed of trust to someone who does not have the right of subrogation as a stranger to the transaction and someone who does not have the original notes in their possession, and thereby lacks standing, or else Plaintiffs abandon the subject property to a party who has no right of subrogation and has no standing. These are false choices.

8.36 The other statement made by the Defendants agent in paragraphs 1 and 2 is that they have the right to foreclose without a judicial process. This statement is false and misleading and designed to induce and mislead Plaintiffs and make Plaintiffs take actions to their detriment, such as abandoning the subject property, because the alleged creditor is required to obtain a judgment from a court of record prior to selling the subject property pursuant to the Seventh

CIVIL COMPLAINT for money damages
and rescission of mortgage contract                    38

Amendment to the US Constitution as previously discussed.

8.37 To understand fraud we must take into account the case of *McNally v. U.S.*, 483 U.S. 350, 371-372, *Quoting U.S. v Holzer*, 816 F.2d. 304, at 307. Fraud in its elementary common law sense of deceit includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, and if he deliberately conceals material information from them he is guilty of fraud.

8.38 "Silence activates estoppel." See *Carmine v. Bowen*, 64 A. 932. "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading." *U.S. v. Tweel*, 550 F.2d 297. "Fraud vitiates even the most solemn promise to pay", see *U.S. vs. Throckmorton*, 98 U.S. 61, 65.

8.39 The Fifth Amendment to our Federal Constitution of 1787, The Northwest Ordinance of 1787, Article Two and similar provisions of the California Constitution, guarantees that no person shall be deprived of life, liberty or property without due process of law. We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, The Plaintiffs, do not recall ever having been given a summons or subpoena or other lawful notice requiring our presence in court in a Quiet Title Action.

8.40 Plaintiff's do not recall ever having been to court over this matter in a Quiet Title Action. Plaintiff's do not recall a trial by the jury, final judgment, access to the appeals process or having seen a court order regarding a determination of Title in an action to Quiet Title. Article Three of the Constitution for the United States of America and Constitution of the United States provides for jurisdiction under the rules of the common law, see *Callan v. Wilson*, 127 US 540.

8.41 The Seventh Amendment to our federal constitution and Article Two of the Northwest Ordinance of 1787 guarantees jurisdiction under the course of the common law. The Defendants actions are not the result of a common law ruling and due process in a court of law, "The 7th Amendment to the Constitution preserves the right of trial by jury in suits at common law involving more than $20, and provides that no fact tried by a jury, shall be reviewed otherwise than according to the rules of the common law.", see *443 Cans of Frozen Egg Product v. United States of America*, 226 US 172.

CIVIL COMPLAINT for money damages
and rescission of mortgage contract          39

8.42 The Defendants have failed to prove or show a court order authorizing private property to be liened, levied or seized based upon a determination of title in an Action to Quiet Title as required under the rules of the common law, and the due process clauses in the Fifth Amendment, and pursuant to the Seventh Amendment to the US Constitution, as discussed previously, mandating a court order be obtained prior to a foreclosure sale.

8.43 The Defendants have used the organs and institutions of government, especially the San Mateo County Recorder's Office to seek to obtain fraudulent title to the subject property and are poised to hold a foreclosure sale without due process of law, and without a trial by the jury under the rules of the common law. The common law right of due process is found in the Fifth and Seventh Amendments to our Federal Constitution.

8.44 The actions taken by the Defendants, attempt to deprive me of my liberty and property without due process of law. Article Three of the original constitution for the united States of America calls for either law courts, see *Callan v. Wilson*, 127 U.S. 540, (1888) "And as the guaranty of a trial by jury, in the third article, implied a trial in that mode, and according to the settled rules of common law". See also <u>Commentaries on the Constitution</u> by Joseph Story, Volume III, Pages 506-507.

8.45 Actions by the Defendants to claim to have a security interest in our private land and home and personal property and claim authority to hold a foreclosure sale is an action beyond the scope of their authority as strangers to the transaction, and as parties who have not brought a suit against us under common law to litigate title. This is described by the United States Supreme Court as tyranny in *United States v. Lee*, 106 US 196, 1S. Ct. 240 (1882) where the United States claimed ownership of property via a tax sale some years earlier, the court made the statements found below.

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest are creatures of the law and are bound to obey it. It is the only supreme power of our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives...... Shall it be said ... that the courts cannot give remedy when the citizen has been deprived of his liberty by force, his estate seized and converted to the use of the government without any lawful authority, without any process of law, and without any compensation, because the president has ordered it and his officers are in possession? If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights."

8.46 In *US v. Lee, id.*, the government can be considered as similar and applying in like manner as the Defendants in the above captioned case. If government agencies cannot take private property without due process of law, how can a bank or mortgage company do so?

8.47 The Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in *Lynch v. Household Finance Corp.*, 405 US 538 (1972);

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a "personal" right whether the "property" in question be a welfare check, a home, or a savings account. In fact a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other.

That rights in property are basic civil rights has long been recognized. J. Locke Of Civil Government 82- 85(1924); J. Adams A Defense of the Constitutions of Government of the United States of America, in F. Coker Democracy, Liberty and Property 121-132 (1942); 1 W. Blackstone, Commentaries 138-140."

8.48 The taking of private property without due process is clearly a violation of civil liberties as well as personal rights. One of the settled principles of our Constitution is that these Amendments are to protect only against invasion of civil liberties by the government whose conduct they alone limit. See *Burdeau v. McDowell*, 256 US 465, 41 S.Ct. 574, 65 L.Ed. 104813 ALR 1159 (1921); *Weeks v. United States*, 232 US 383, 34 S.Ct. 341, 58 L.Ed. 652, (1914); *Hall v. United States*, 41, F.2d 54 (9th Cir. 1930); *Brown v. United States*, 12 F.2d 926 (9th Cir. 1926). Therefore the organs of government cannot be used to participate and assist in the unlawful plunder of Plaintiff's private allodial property.

8.49 **Second**. In the United States of America, after of the Revolutionary War of 1775, feudal titles came to an end and were replaced by allodial titles. This structural change in the nature of titles, which came with self government, is aptly described by The Pennsylvania Supreme Court in *Wallace v Harmstad*, 44 PA 492 (1863) which states the following;

> "... the Revolution would have operated very inefficiently towards complete emancipation if the feudal relation had been suffered to remain. It was therefore necessary to extinguish all foreign interest in the soil, as well as foreign jurisdiction in the manner of government. . . . we are then to regard the Revolution and these Acts of the Assembly as emancipating every acre of the soil (of Pennsylvania) from the grand characteristic of the feudal system."

8.50 From this Plaintiff's conclude that titles in all of the several states of the united States of America are purely allodial. My allodial title means that Plaintiff's are not a vassal, serf or indentured servant. The Defendants, and all of them, do not have a lawful claim to my home and land. The Defendants, and all of them, do not have a higher title than I do, or any right, title or interest in the subject property except perhaps by fraud, which is void *ab initio*, since fraud vitiates everything. Similarly, JP MORGAN CHASE BANK, NA, does not have any right, title or interest in my land and home.

8.51 **Third**. Patented Land cannot be collaterally attacked. The private property in question, which is defined in **Exhibit** A, is also a parcel of land that was once a part of a much larger tract of land patented by my predecessor -in -interest in a land patent procedure. Please see Summa Corp. v California Ex Rel; Supra (1984), which states;

"We hold that California cannot at this late date, assert it's public trust easement over petitioner's property, when petitioner's predecessors -in -interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the act of 1851."

8.52 Claims by government agencies are no different than claims by private corporations and banks, as are the Defendants. Neither the Defendants nor the original mortgage holder filed any sort of competing claim, or any other sort of claim in the patent proceeding for this land. See also *Gibson v. Chouteau*, 13 Wall 92; 20 L.Ed. 534, which states, "In an action of ejectment in state courts, when the question presented is whether the plaintiff or the Defendant has the superior legal title from the United States, the Patent must prevail." See also *Field v. Seabury*, 19 How 323; 15 L.Ed. 650 ("A court of law in a state where strict common law prevail will not look behind or beyond the grant, to the rights upon which it is founded, nor examine the progressive stages of the title antecedent to the grant."); *Ross v.Doe; ex dem. Barland*, 1 Pet 655; 7 L.Ed. 302 ("A patent for lands is conclusive in an action at law as to the legal title, and cannot be collaterally impeached unless absolutely void on it's face, or issued without authority."); *St Louis Smelting and Refining Co. v. Kemp*, 104 US 636; 26 L.Ed. 875 ("Only one having a prior right can attack a patent collaterally."); *Doolan v. Carr*, 125 US 618, 8 S.Ct. 1228 ("A patent is the highest evidence of title and is conclusive against the government and all claiming under junior patents and titles."); *United States v. Maxwell Land Grant Co.*, 121 US 325, 7 S.Ct. 1015; *Stone v. US*, 2 Wall 525; 17 L.Ed. 765.

8.53 We are the exclusive holder of the patent to the land and home, which is the subject of this complaint, and thereby have exclusive ownership, right, title, estate and interest in the land and home, which is the subject of this complaint. The Defendants cannot collaterally attack patented land. Our land is derived from the Land Patent that was issued by The United States, to our predecessor-in-interest.

8.54 Therefore, pursuant to these US Supreme Court rulings neither the Defendants nor the original mortgage holder have any claim to or right, title, estate or interest in our private land and home. We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, the Plaintiffs in this matter have allodial title, which is the highest title anyone can have to their land. No one has superior title.

8.55 As the Plaintiffs, We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, seek to quiet title against all claims by the Defendants to any security interest, lien, right, title or interest, or power to take control of the subject land and home, the subject property.

8.56 The Defendants adverse fraudulent claims are without any rights whatsoever, without any foundation in law, and cannot in any way extinguish my lawful common law exclusive claim to my own private allodial land and house. We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, the Plaintiffs in this matter, seek to quiet title as of the date of the notice of default and demand for payment from JP MORGAN CHASE BANK, NA.

8.57 **Fourth**. The Defendants have no right of subrogation as a stranger to the transaction, a mere volunteer and as a Party who has not tendered the full amount of the mortgage debt. The right of Subrogation does not exist for the Defendants or their assigns, agents, or principals. Upon information and belief, it appears that the Mortgage Backed Security (or an undisclosed third party note buyer) purchased the notes and deeds of trust, and they have no right of subrogation as a stranger to the transaction.

8.58 The assignment of the notes and mortgages for our property is unlawful since the assign, The Mortgage Backed Security (or an undisclosed third party note buyer), was a stranger to the transaction and has not provided evidence that they paid off the entire mortgage debt in full.

8.59 The Defendants have failed to provide any evidence in this matter of payment of the entire Mortgage debt in full, therefore under the doctrine of latches, the presumption that the Defendants including, JP MORGAN CHASE BANK, NA, and the Mortgage Backed Security (or the undisclosed third party note buyer), all of the other Defendants (and Doe Defendants) did not pay the entire mortgage debt in full is unrebutted and is therefore a fact undisputed and agreed to by the Defendants.

8.60 Therefore, under the doctrine of latches, the presumption that the Defendant, the Mortgage Backed Security is acting in the shadows as an undisclosed third party note buyer, did not pay the entire mortgage debt in full is unrebutted and is therefore a fact undisputed and

agreed to by the Plaintiff, see, 73 AmJur2d § 90, which states that a right of subrogation does not exist for a mere volunteer, or some one who has not paid the entire mortgage debt in full. Please review the following for affirmation that the right of subrogation does not exist for the Defendants. See *Henningsen v. United States Fidelity & G. Co.*, 208 US 404, 52 L.Ed. 547, 28 S.Ct. 389; *Prairie State National Bank v. United States*, 164 US 227, 41 L.Ed. 412, 17 S.Ct. 142; Aetna L. Ins. Co. v. Middleport; 124 US 534, 31 L.Ed. 537; 8 S.Ct. 625; *McBride v. McBride*, 148 Or 478, 36 P 2d 175.

8.61 AS A RESULT, THE DEFENDANTS INCLUDING, JP MORGAN CHASE BANK, NA's PRINCIPAL, A MORTGAGE BACKED SECURITY OR UNDISCLOSED THIRD PARTY NOTE BUYER, DOES NOT HAVE ANY RIGHT, TITLE OR INTEREST IN THE PROPERTY, WHICH IS THE SUBJECT OF THIS ACTION TO QUIET TITLE, AS THEY ARE ACTING ON BEHALF OF AN UNDISCLOSED THIRD PARTY NOTE BUYER, ONE WHO DOES NOT HAVE THE RIGHT OF SUBROGATION TO THE ORIGINAL NOTES THAT THEY APPARENTLY PURCHASED AND THAT WERE ALLEGEDLY ASSIGNED TO THEM. THEY HAVE NEVER HAD STANDING TO FORECLOSE ON MY PROPERTY.

8.62 **Fifth**. The Defendants cannot foreclose without a Judicial Determination of The Status of The Defendants as The Owner in a Court of Common Law and by Way of A Quiet Title Action.

8.63 The Defendants, by their action are attempting to force me out of the subject property without due process of law. Pursuant to the rules of the common law, the Defendants do not have the right to foreclose.

The Defendants clearly violated California law when they threatened foreclosure proceedings, since California is bound by the US Constitution. Pursuant to the Fifth Article of Amendment to our Federal Constitution, the Defendants cannot seek to obtain non-judicial remedies to obtain title, thereby claiming to have a 'perfected title', and thereby circumventing the due process requirements as guaranteed under the Fifth Amendment.

8.64 A quiet title action must be adjudicated prior to any foreclosure action taken or being tried in court, pursuant to the Seventh Amendment to the US Constitution. Also California law, under California Civil Code § 2932.5 requires the Defendants including, JP MORGAN CHASE BANK, NA to record an assignment of the deed of trust, which was not done.

8.65 The unlawful action taken by the Defendants was not preceded by a final judgment in an Action to Quiet Title, and is therefore violative of my due process rights, see the Seventh Amendment to the US Constitution. The US Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in *Lynch v. Household Finance Corp.*, 405 US 538 (1972).

8.66 This case is similar and analogous to the Lynch case, referenced above, because property is going to be seized without judicial due process. The Defendant is proceeding as if rights were waived. Plaintiffs have never waived any rights in this matter, knowingly, intelligently or voluntarily, including my right to judicial due process. Please see *Brady v US*, 397 US 742 at 748 for confirmation that rights must be waived knowingly, intelligently and voluntarily.

8.67 The outcome of this case will determine the ownership of the subject property and the validity of the claims of the parties. The foreclosure action taken by the Defendants lacks personal and subject matter jurisdiction because of; **1)** the misrepresentation of material facts by the Defendants that they have the right to foreclose **2)** the failure and refusal by the Defendant, JP MORGAN CHASE BANK, NA, and CHASE HOME FINANCE, LLC to produce the original notes, **3)** the fact that the seizure of the private property in question is not lawful because it violates the doctrine of due process established by California Common Law and by the US Supreme Court in Lynch v Household Finance, supra, by skipping and circumventing the

requirement to file an Action to Quiet Title under common law to determine with certainty who has title to the property, as required under the Seventh Amendment to the US Constitution and **4)** it violates my due process rights as Plaintiff in the Quiet Title Action.

8.68 The Defendants are preparing to file an eviction/ unlawful detainer complaint against me. If they do they may obtain a void judgment against me, since they did not meet all of the requirements for foreclosure under the Seventh Amendment to the US Constitution. When a state court proceeds in an action such as an unlawful detainer, in this context where there is no case for anything other than dismissal, under these circumstances, all of its judgments are void. "The jurisdiction of the court depends on the correctness of the allegation." See *US v Percheman* (1833) 32 US 518 L.Ed. 604 at 617. "Where a court has jurisdiction it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void." See *Wilcox v Jackson*, 13 Peters 264 (1839), quoting *Elliot et al v Piersol*, 1 Peters 340.

8.69 **Sixth**. The Mortgages and Notes are not valid because of Inherent Fraud in the Note and Deed of Trust. WASHINGTON MUTUAL BANK at one point advertised that they have lawful money in their possession, available to loan to me. As the Plaintiff, I was contacted by WASHINGTON MUTUAL BANK and said party offered to make such a loan of lawful money, which they reported to have in their possession.

8.70 We, Lawrence Munar Asuncion and Maria Estrella C. Asuncion, the Plaintiffs, relied upon said advertised offer and statements of WASHINGTON MUTUAL BANK and accepted their offer of lawful money. Thereafter, WASHINGTON MUTUAL BANK, with full knowledge and intent, and knowing that their offers were false and misleading, drew up two notes and deeds of trust, which the Plaintiffs relied upon to be true and correct. Soon after that, without full disclosure and without the Plaintiff's consent and agreement, WASHINGTON MUTUAL BANK stamped the words "Pay to the Order Of" on the promissory notes in the same manner as one would endorse a check, and opened a demand deposit account in the name of the Plaintiffs.

8.71 One of the Defendants then deposited the said loan amount in that account as an asset to fund the loan, without full disclosure. This act violated generally Accepted Accounting Principles (GAAP), since that system of bookkeeping is used by all of the banks, and requires

that every asset be balanced and offset by a liability. Title 12 USC §§ 248 and 347, require the 2046 balance sheet as it relates to the ledgering of the original loan account and will show extinguishment of the loan, and this must be filed pursuant to Title 12 USC §§ 248 and 347. Form S 3, is a registration statement filed with the SEC and must be filed whenever the original note is sold.

8.72 The SEC also requires the filing of a Form 424 B-5 Prospectus, and 425 B, which also shows the bundling of notes for delivery into a REMIC (Real Estate Mortgage Investment Conduit). See also IRS Publication 938. The Financial Accounting Standards Board has established standards for accounting regarding notes, including FAS 125, 133, 140, 5 and 95, which will show the liability side of the bank's books and will create a trail of exactly where the money came from and where it went and will confirm, in discovery, the legal theory advanced in this action to quiet title. Title 12 USC § 1813(L)(1) states that when the bank deposits a promissory note it becomes a cash item to the bank and is ledgered as an asset on their books, and the bank was supposed to provide a receipt for it, which was not done. The banks bundle, securitize and sell the notes to a REMIC, often without disclosure to the borrower.

8.73 When the original lender processed the original notes they countersigned the notes with a stamp that says "pay to the order of" and 'without recourse', please see **Exhibit D**. This act of countersigning the notes with an endorsement changed the terms of the loan, without full disclosure, and altered the notes, with an endorsement, which is a violation of Federal Law; the National Banking Act of 1864, § 27, which states as follows:

> "And be it further enacted, that it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any Association, or to any other company or person, any circulating notes contemplated by this act, except as hereinbefore provided, and in accordance with the intent and meaning of this act. And any officer who shall violate the provisions of this section, shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one year and not greater than fifteen years, at the discretion of the court at which he shall be tried."

8.74 The Defendant listed the promissory notes as an asset of the lender, without also listing them as a liability of the lender, as is customary when a paycheck or cash is deposited. This act of endorsement of the promissory notes without full disclosure was a defect in the

bookkeeping records. The Defendants based their claim upon a mortgage contract (Deed of Trust), which is in its very nature fraudulent.

8.75 There is no valuable consideration in the existing mortgage contract, because there was nothing of intrinsic value loaned in the agreement. The original lender loaned Federal Reserve notes, which are commercial paper pursuant to a decision by the United States Supreme Court, see *Clearfield Trust Company v. US*, 318 US 363.

8.76 The notes and mortgage indentures, violates Article I, § 10 of the US Constitution and the Constitution for the united States of America. The notes and mortgage indentures, violates The Coinage Act of 1792. In the united States of America, no state can make anything but gold and silver coin a tender in payment of debt, see Federal Const. Art. 1 Sec.10.

8.77 Gold and silver coin has intrinsic value, and is exclusively lawful money in the united States of America. The Mortgage contract (note and mortgage) did not provide for the loaning of gold and silver coin, and did not provide for the repayment of the debt in gold and silver coin, as required under our Federal Constitution, Art. 1, Sec. 10, and is, therefore, not a lawful contract, because something other than gold and silver coin was made a tender in payment of debt. The mortgage contract, note and deed of trust is unconstitutional, see *Woodruff v. Mississippi*, 162 US 291,16 S.Ct. 820, 40 L.Ed. 973; *Julliard v Greenman*, 110 US 421, 447, 4 S.Ct. 122, 28 L.Ed. 204, *Knox v Lee*, 79 US (12 Wall) 457, 20 L.Ed. 287. See also the definition of Lawful Money, <u>Webster's New International Dictionary</u> (2d ed. 1950).

8.78 The collection of this alleged debt is unconstitutional, see *Julliard v Greenman*, 110 US 421, 447, 4 S.Ct. 122, 28 L.Ed. 204; *Knox v. Lee*; 79 US (12 Wall) 457, 20 L.Ed. 287; *Woodruff v. Mississippi*, 162 US 291 ("For the power to borrow money, simply meant the power to borrow whatever was money according to the Constitution of the United States and the laws passed in pursuance thereof, and the power to issue negotiable bonds therefore included the power to make them payable in such money. This is the law presumed, and to proceed on an implication to the contrary was to deny to the holders of these bonds, subsequent to their purchase, a right arising under the Constitution and laws of the United States."

8.79 In two of the above cases, the US Supreme Court stated that the use of paper money was acceptable under the above-cited sections of the US Constitution, because the currency at the time of these rulings was backed by silver and gold coins. Woodruff v. Mississippi, and Article I, § 10 of the US Constitution must be held as valid in this matter as the supreme law of the land, since the court is required to be faithful to the law and cannot engage in judicial nullification.

8.80 **Seventh**. The Defendants Cannot Validate the Debt, Therefore the obligation is extinguished, and any claim to the land is void.

The Defendants agents and debt collectors failed to validate and verify the debt in accordance with the Fair Debt Collection Practices Act Title 15 USC, § 1692(g) and numerous sections of the Uniform Commercial Code, all of which are a reflection of the rules of the common law. In our constructive notice we offered to pay the Defendants agents if they would validate the debt and demonstrate that they have the right of subrogation. They have failed to respond to our constructive notice and are, therefore in default on our offer. As a result of the foregoing the obligation is extinguished. See *Walker v. Houston*, 215 Cal 742; 12 P.2d 953, 953, 87 A.L.R. 937.

8.81 **Eighth**. The Defendants in this matter have not responded to Plaintiff's request to validate the debt as required in the Offer of Performance, therefore the obligation is extinguished, See **Exhibit** G. Please note the Defendants claim that they have the right to foreclose, however, the right of subrogation does not exist for the Defendants, and all of them, as a stranger to the transaction, pursuant to the case law below; see 73 AmJur2d § 90 which states that a right of subrogation does not exist for a mere volunteer, or some one who has not paid the entire mortgage debt in full. Please review the following for affirmation that the right of subrogation does not exist for the Defendants. See all *supra Henningsen v. United States Fidelity & G. Co.*; *Prairie State National Bank v. United States*; *Aetna L. Ins. Co. v. v. Middleport*; *McBride v. McBride*.

8.82 AS A RESULT OF THE FOREGOING US SUPREME COURT RULINGS, THE DEFENDANTS DO NOT HAVE THE AUTHORITY TO FORECLOSE BECAUSE THEIR UNDISCLOSED THIRD PARTY NOTE BUYER DOES NOT HAVE THE RIGHT OF SUBROGATION. AS A RESULT, THEY CANNOT VALIDATE THE DEBT BECAUSE THEY ARE NOT THE HOLDER OF THE NOTE AND CANNOT ENFORCE THE NOTE THAT THEY CLAIM TO HAVE PURCHASED FROM THE ORIGINAL LENDER.

8.83 In addition, the Defendants never proved that the full amount of the mortgage was paid by the Undisclosed Third Party Note Buyer further amplifying the fact that a right of subrogation does not exist. In most cases the mortgage companies and banks sell the notes to each other for pennies on the dollar, meaning that they do not pay the entire mortgage debt in full, thereby providing another reason why they do not have the right of subrogation.

8.84 **Ninth**. Plaintiff's have a Common law Lien against the property which must be satisfied before any equity liens are satisfied, See **Exhibit** H. Common law liens in law supersede mortgages and equity liens, *Drummond Carriage Co.v. Mills*, 74 NW 966 (1898); *Hewitt v. William*, 47 La.Ann. 742; 17 So. 269; *Carr v. Dail*, 19 SE 235; *MacMahon v. Lundin*, 58 NW, 827; and may be satisfied only when a Court of Common Law pursuant to order of the elected Sheriff under of Article Seven of the Bill of Rights.

8.85 **Tenth**. The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603.

8.86 The Offer of Performance is the necessary instrument to cause the discharge of the alleged debt in this matter. Please note under the tender laws, if the payment is made and refused, the debt is discharged, please see UCC 3 - 603 and UCC 2-511. Also under The Truth in Lending Act, 15 USC § 1601, Under Regulation Z the Defendant has to object to the tender of payment within three days or be barred from objecting later. See *Nygaard v. Continental Resources, Inc*, 598 N.W. 2d 851, 39 UCC 2d 851.

8.87 As the Plaintiff, I have no other recourse or remedy. We offered to pay the entire debt in full if the Defendants agent would validate the debt, and if they can prove that they have a right of subrogation, SEE **EXHIBIT G**. The Defendants agents did not accept my offer. The Defendant Thereby violated our right to due process of law, by failing to either accept our conditional offer to pay the debt by validating the debt and proving that they have the right of subrogation or disclaiming any right title or interest in the property.

8.88 "A tender is an offer of performance, made with the intent to extinguish the obligation when properly made, has the effect of putting the other party in default if he refuses to accept it." *Wiesenberg v. Hirshorn*, 97 Cal App. 532, 275 P. 997; *Lovetro v. Steers*, 234 Cal.App. 2d 461, 44 Cal.Rptr. 604; *Holland v. Paddock*, 142 Cal.App.2d 534, 298 P2d 587. "...The imposition of such conditions is waived by the offeree if he does not specifically point out the alleged defects in the tender." Civil Code Sec. 1501; Code of Civil Procedure Sec. 2076; *Hohener v. Gauss* (1963) 221 Cal. App.2d 797, 34 Cal.Rptr. 656. "The rationale of the requirement of specific objection is that the offeror should be permitted to remedy any defects in his tender; the offeree is therefore not allowed to remain silent at the time of the tender and later surprise the offeror with hidden objections," *Thomassen v. Carr*, (1967) 250 Cal.App.2d 341, 350, 58 Cal Rptr. 297; *Riverside Fence Co. v. Novak*, (1969) 78 Cal. Rptr. 536; *Walker v. Houston*; 215 Cal 742; 12 P.2d 953 at 953, 87 A.L.R. 937.

8.89 The Defendant never accepted my offer to pay the debt by failing to comply with our conditions precedent. They did this by failing to validate the debt. THE MATTER IS SETTLED UNDER THE DOCTRINE OF NIHIL DECIT.

8.90 The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603. The conditional offer to pay is the necessary instrument to cause the discharge of the Defendant's Demand for Payment in this matter. Please note under the tender laws, if the payment is made and refused, the debt is discharged, please see UCC 3 - 603 and UCC 2-511. See *Nygaard v. Continental Resources, Inc.*, 598 N.W.2d 851, 39 UCC2d 851. As the Plaintiffs we have no other recourse or remedy.

CIVIL COMPLAINT for money damages
and rescission of mortgage contract                52

8.91 The lender never produced a verified claim demonstrating that something of value or substance was loaned in the transaction. Therefore, the Defendants have no right to pursue this matter in court under Title 15 USC §§ 1692(g) and(e).

8.92 Therefore, the Defendant has no right to demand payment. Also, our good faith offer of performance was not accepted and therefore the obligation is extinguished. Although the Defendants are poised to force us out of the property, See **Exhibit** B, they never produced evidence that they are the holder-in-due-course of the note.

8.93 **Eleventh**. The rule of decision in California courts is common law. Under the Seventh Amendment to the Constitution for the united States of America, we are entitled to a common law trial by the jury, *443 Cans of Frozen Egg Product v. United States of America*, 226 US 172; *Morris v. United States*, 8 Wall. 507, 19 L.Ed. 481; *The Sarah*, 8 Wheat. 391, 5 L.Ed. 644; *United States v. La Vengeance* (reported in 3 Dall. 297, 1 L.Ed. 610) *United States v. The Sally* (in 2 Cranch 406, 2 L.Ed. 320 and *United States v. The Betsy* (in 4 Cranch 443, 2 Led. 673). "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed." See *Norton vs. Shelby County*, 118, US 425, 442. See also *Miranda v. Arizona*, 384 U.S. 436 (1966) ("Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them").

8.93 On dry land, any action must be adjudicated under common law pursuant to the Seventh Amendment. According to the US Supreme Court, in 443 Cans of Frozen Egg Product v. United States of America; Supra, the US Supreme Court stated as follows; "The 7th Amendment to the Constitution preserves the right of trial by jury in suits at common law involving more than $20, and provides that no fact tried by a jury, shall be reviewed otherwise than according to the rules of the common law." The Northwest Ordinance of 1787 also requires a common law court pursuant to Article Two, since the State of California is bound by compact, via their act of admission under the equal footing doctrine as a state on an equal footing with the states such as Illinois or Wisconsin formed from the Northwest Territories, see *Wilcox v Jackson*, 13 Peters 264 (1839).